IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| **WILDERNESS TRAINING & CONSULTING, LLC, et al.,**  Plaintiffs,  v.  **ASPEN EDUCATION GROUP, INC., et al.,**  Defendants. | **MEMORANDUM DECISION AND ORDER**  Case No. 2:14cv866  District Judge Ted Stewart  Magistrate Judge Paul M. Warner |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Ted Stewart pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Wilderness Training & Consulting, LLC; Lake Montezuma RTC, LLC; Escalante RTC, LLC; Syracuse RTC, LLC; and Syracuse Institute, LLC's (collectively, "Plaintiffs" or "Buyers") motion for a prejudgment writ of replevin.[2] Specifically, Plaintiffs argue that Aspen Education Group, Inc.; Aspen Youth, Inc.; Turn-About Ranch, Inc.; Island View Residential Treatment Center, LLC; Copper Canyon Academy, LLC; Aspen Institute for Behavioral Assessment, LLC (collectively, "Sellers") and CRC Health Corporation ("CRC Health") (collectively, "Defendants") have failed to deliver monies owed to Plaintiffs that Defendants have received since Plaintiffs purchased the assets of Sellers in April 2014.

---

[1] *See* docket no. 21.

[2] *See* docket no. 20.

The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda.  *See* DUCivR 7-1(f).

## RELEVANT BACKGROUND

On or about March 7, 2014, Plaintiffs and Sellers entered into an Asset Purchase Agreement ("Agreement") pertaining to the purchase of several residential treatment programs and/or therapeutic boarding schools located in the State of Utah ("Programs").  Section 6.11 of the Agreement, entitled "Misdirected Payments," provides as follows:

> From and after the Closing, if a Seller or any of its Affiliates receives or collects any funds relating to any Program . . . , any Accounts Receivable or any other Purchased Asset, such Seller or such Affiliate shall remit such funds to Buyers within five business days after its receipt thereof. For the avoidance of doubt, any funds received after the Closing Date by any Seller or its Affiliates from or on behalf of any Students or any other clients of the Program shall be the sole and exclusive property of Buyers and shall be remitted to Buyers in accordance with the foregoing sentence.[3]

It is undisputed that subsequent to the execution of the Agreement and closing of the transaction, Sellers have received and collected accounts receivable as Misdirected Payments in connection with the Programs and delivered those funds to CRC Health.  Plaintiffs allege that CRC Health has wrongfully held the Misdirected Payments and has failed to release such funds to Plaintiffs as required by the Agreement.  According to Plaintiffs, as of January 5, 2015, CRC Health has wrongfully held Misdirected Payments in the amount of $354,899.12.  Plaintiffs filed

---

[3] Docket no. 20 at 3.

this lawsuit against Defendants in state court alleging claims for breach of contract and conversion.

Defendants removed this matter to federal court and counterclaimed for breach of contract and breach of the implied covenant of good faith and fair dealing. While Defendants admit that they did not forward the Misdirected Payments to Plaintiffs, they contend that Plaintiffs were in material breach of the Agreement at the time Defendants received the funds. Therefore, Defendants argue, they were no longer obligated to perform under the Agreement because they were entitled to claim rights of setoff and recoupment. Defendants allege that Plaintiffs materially breached the Agreement by (1) exercising duress against Sellers to force a reduction in the purchase price, (2) engaging in bad faith by attempting to force Sellers to double pay paid time off ("PTO") to the employees of the Programs, and (3) improperly calculating the post-closing adjustment of the purchase price.

Plaintiffs now seek a writ of replevin or, in the alternative, writs of attachment and/or garnishment in this matter. Plaintiffs argue that the impending sale of CRC Health's parent company, CRC Health Group, Inc. ("CRC Group"), to Acadia Healthcare Company, Inc. ("Acadia") may leave Plaintiffs with no recourse to recover the funds they allege are owed to them. However, according to Defendants, the sale of CRC Group to Acadia is merely a merger transaction, not an asset sale. Defendants assert that Acadia will be the new parent entity of CRC Health, there will be no disruption to CRC Health's business operations, and CRC Health will continue as a going concern. Thus, Defendants conclude, there is no risk that the Misdirected Payments would be unrecoverable if Plaintiffs were to prevail on their claims.

## DISCUSSION

In this case, the laws of Utah govern the procedure for the issuance of a prejudgment writ. *See* Fed. R. Civ. P. 64(a).[4] Under rule 64A of the Utah Rules of Civil Procedure, "[a] writ of replevin, attachment[,] or garnishment is available after the claim has been filed and before judgment only upon written order of the court." Utah R. Civ. P. 64A(a). For the court to issue a prejudgment writ, the elements of rule 64A must be satisfied, in addition to the grounds for the specific writ. *See* Utah R. Civ. P. 64A(c). Under rule 64A, a party must establish each of "the requirements listed in subsections (c)(1) through (c)(3)," and also "at least one of the requirements listed in subsections (c)(4) through (c)(10)." *Id.* These requirements are as follows:

> (c)(1) that the property is not earnings and not exempt from execution; and
> (c)(2) that the writ is not sought to hinder, delay or defraud a creditor of the defendant; and
> (c)(3) a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim; and
> (c)(4) that the defendant is avoiding service of process; or
> (c)(5) that the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, the property with intent to defraud creditors; or
> (c)(6) that the defendant has left or is about to leave the state with intent to defraud creditors; or
> (c)(7) that the defendant has fraudulently incurred the obligation that is the subject of the action; or
> (c)(8) that the property will materially decline in value; or
> (c)(9) that the plaintiff has an ownership or special interest in the property; or
> (c)(10) probable cause of losing the remedy unless the court issues the writ.

---

[4] Pursuant to rule 64 of the Federal Rules of Civil Procedure, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Thus, the Utah Rules of Civil Procedure regarding the issuance of writs apply in this matter.

Utah. R. Civ. P. 64A(c)(1) to (c)(10).

Defendants do not dispute that Plaintiffs have met the first two requirements under rule 64A as (1) "the property is not earnings and not exempt from execution" and (2) "the writ is not sought to hinder, delay or defraud a creditor of the defendants." Utah R. Civ. P. 64A(c)(1)-(2). However, Defendants argue that Plaintiffs have failed to demonstrate that there is a "substantial likelihood that [they] will prevail on the merits of the underlying claim." Utah R. Civ. P. 64A(c)(3).

To prevail on their breach of contract claim, Plaintiffs must show (1) the existence of a contract, (2) performance by Plaintiffs, (3) failure to perform by Defendants, and (4) damages. *See, e.g.*, *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001). Defendants assert that because Plaintiffs materially breached the Agreement first, Defendants were excused from performance. As noted above, Defendants allege that Plaintiffs first breached the Agreement by (1) placing Defendants under duress to force a reduction in the purchase price for the Programs, (2) forcing Defendants to double pay their employees PTO, and (3) improperly calculating the post-closing adjustment of the purchase price. Under Utah law, "[o]nly a material breach will excuse further performance by the non-breaching party." *Cross v. Olsen*, 303 P.3d 1030, 1035 (Utah Ct. App. 2013). "[A] breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract" such that performance by Defendants would be excused. *Id.*

The court concludes that Plaintiffs have demonstrated their substantial likelihood of success on the merits of their breach of contract claim. Plaintiffs have established that

Defendants breached the Agreement by failing to remit the Misdirected Payments to Plaintiffs. Defendants' affirmative defenses and counterclaims have failed to persuade this court that Plaintiffs are not likely to prevail on their claims. Even assuming the truth of Defendants' alleged "first breaches," the court is not persuaded that any of these circumstances would constitute a material breach of the Agreement thus excusing Defendants from specific performance.

Under Utah law, "conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 728, Utah 1958). "[A] party alleging conversion must show that he or she is entitled to immediate possession of the property at the time of the alleged conversion." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295-96 (Utah 1999). Because Plaintiffs have shown that Defendants willfully retained the Misdirected Payments without lawful justification and that Plaintiffs were entitled to immediate possession of them "five business days after . . . receipt,"[5] Plaintiffs are likely to prevail on their conversion claim as well.

Furthermore, Plaintiffs have met at least one of the other requirements of rule 64A. Specifically, Plaintiffs have demonstrated that they have an ownership or special interest in the Misdirected Payments. *See* Utah R. Civ. P. 64A(c)(9). And, while the risk might be minimal, the court cannot ignore Plaintiffs' concern regarding the impending sale of CRC Group to Acadia notwithstanding Defendants' assertion that the Misdirected Payments will be recoverable should Plaintiffs prevail on their claims. *See* Utah R. Civ. P. 64A(c)(10).

---

[5] Docket no. 20 at 3.

As noted above, Plaintiffs seek a writ of replevin or, in the alternative, writs of attachment or garnishment. Under rule 64B, "[a] writ of replevin is available to compel delivery to the plaintiff of specific personal property held by the defendant." Utah R. Civ. P. 64(B)(a). For the court to issue a prejudgment writ of replevin, the court must also find that "the plaintiff is entitled to possession" and "the defendant wrongfully detains the property." Utah R. Civ. P. 64B(b)(1)-(2). For a writ of attachment to issue, the court must find that (1) "the defendant is indebted to the plaintiff," (2) "the action is upon a contract or is against a defendant who is not a resident of this state," and (3) "payment of the claim has not been secured by a lien upon property in this state." Utah R. Civ. P. 64C(b)(1)-(3). And "[a] writ of garnishment is available to seize property of the defendant in the possession or under the control of a person other than the defendant." For a writ of garnishment to issue, the court must find that (1) "the defendant is indebted to the plaintiff," (2) "the action is upon a contract or is against a defendant who is not a resident of this state," (3) "payment of the claim has not been secured by a lien upon property in this state," (4) "the garnishee possesses or controls property of the defendant," and (5) "the plaintiff has attached the garnishee fee established by Utah Code Section 78A-2-216."

Defendants assert that the Misdirected Payments sought by Plaintiffs are not "specific personal property" as contemplated by the law governing replevin. While the court agrees with Defendants that a writ of replevin is not the appropriate remedy in this instance, the court concludes that Plaintiffs have demonstrated that a writ of attachment should issue. Specifically, in addition to the requirements set forth in rule 64A(c)(1) to (c)(10), Plaintiffs have demonstrated that (1) Defendants are "indebted" to Plaintiffs in the amount of $354,899.12; (2) this is an action based upon a contract, (3) none of the defendants are residents of this Utah, and (4) "payment of

the claim has not been secured by a lien upon property" in Utah. Utah R. Civ. P. 64C(b)(1)-(3). Accordingly, this court concludes that Plaintiffs have satisfied the requirements for the issuance of a prejudgment writ of attachment.

Based on the foregoing, the court **GRANTS** Plaintiffs' motion for a prejudgment writ of attachment. Within ten (10) days of the date of this order, Defendants shall deposit $354,899.12 with the clerk of the court to be held pending resolution of the parties' respective claims. Furthermore, on an ongoing basis, Defendants shall deposit with the clerk of court any additional funds identified as Misdirected Payments that Defendants have received since January 5, 2015, or that Defendants will receive in the future.

**IT IS SO ORDERED**.

DATED this 18th day of February, 2015.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge